FRANK J. EVERITT, APPELLANT, V. FARMERS & MERCHANTS BANK ET AL., APPELLEES.*

FILED JULY 17, 1908.. No. 15,220.

1. **Corporations:** TRANSFER OF STOCK: RECORDING ASSIGNMENT. In the absence of controlling statutes, a purchaser of the capital stock of a corporation for a valuable consideration, in the absence of fraud, is protected against subsequent attachment or execution issued against his grantor, although he failed to have his assignment recorded upon the books of the corporation.

*Rehearing denied. See opinion, p. 198, *post.*

2. ——: ——: BONA FIDE PURCHASER. The rule that a vendee is not a *bona fide* purchaser for value until he has actually paid the purchase price or become irrevocably bound for its payment cannot be invoked against one who has promised to give a consideration for the transfer assailed, unless it appears that the transfer will hinder or delay the vendor's creditors.

3. Fraudulent Conveyances: BURDEN OF PROOF. Where a transfer of property between persons not related is assailed as fraudulent, the fact that the consideration was paid to the grantor's near relative upon assignment thereof does not change the rule imposing upon the party assailing the transaction the burden of proving it fraudulent.

4. Corporations: TRANSFER OF STOCK: SUIT TO ENFORCE. A *bona fide* purchaser of the capital stock of a corporation may sue in equity to compel the corporation to enter the assignment upon its books, and to issue a new certificate therefor, and to restrain the sheriff from selling said stock upon an execution against the vendor, the corporation and sheriff being parties to the action.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*N. P. McDonald* and *George W. Wertz,* for appellant.

*H. M. Sinclair* and *C. A. Robinson, contra.*

EPPERSON, C.

The plaintiff, claiming to be the owner of certain shares of the capital stock of the Farmers & Merchants Bank of Elm Creek, instituted this action in equity to confirm his title thereto, and to procure possession of the certificates representing the same, to enjoin a threatened sale of said stock upon an execution issued against his grantor, and to compel the bank to enter the transfer of said stock upon its books and issue to him a new certificate therefor. The sheriff, who held the execution, and the judgment creditor, Beecroft, and the bank were made defendants. The sheriff filed an answer, alleging that he levied upon the shares of stock as the property of Spencer, and he further alleged, as did Beecroft in a separate answer by

him filed, that the pretended sale and transfer of stock by Spencer to the plaintiff was made by Spencer for the purpose of hindering, delaying and defrauding his creditors, of which the plaintiff had full knowledge, and, further, that the plaintiff paid no consideration for the stock. The bank filed a disclaimer. There is little or no dispute as to the facts. On July 16, 1906, the plaintiff herein negotiated with T. G. Spencer for 6¾ shares of the capital stock of said bank, and received therefor an assignment in form as follows: "Kearney, Neb., July 16, 1906. For value received, I hereby assign and transfer to F. J. Everitt all my interest in 6¾ shares of the capital stock of the Farmers & Merchants Bank of Elm Creek, Nebraska, standing in my name on the books of the bank, and the proper officers of said bank are authorized and directed to transfer said shares to said F. J. Everitt on the books of the bank and issue to him a certificate therefor. T. G. Spencer." This stock was represented by two certificates, each of which provided that the stock it represented was transferable only on the books of the bank on the surrender of the certificate properly indorsed. Spencer did not have possession of, and was unable to deliver, said certificates to the plaintiff, for the reason that the same were in the possession of the bank, where they had remained from the time they were issued, although they had been demanded by Spencer. At the time of the purchase by plaintiff, he was preparing to go on a business or pleasure trip, and did not have the time to present his assignment to the bank, nor did he take the time to give Spencer his note for $675, the consideration agreed upon. It was the understanding that he would give the same upon his return home. When he returned, he further delayed because of a restraining order procured by Spencer's judgment creditor, Beecroft. By the same restraining order the bank was enjoined from transferring said bank stock on its books, or from disposing of or delivering the same from its possession. "Bee-

croft had a judgment against Spencer for $1,348, dated September 14, 1901. On September 4, 1906, an execution was sued out by Beecroft and levied by the sheriff upon the said shares of stock. It also appears that some sort of a notice was served by plaintiff upon the officers of the bank on the day the execution was levied, notifying the bank formally of his assignment, and demanding a transfer of said stock to him. Although the record is not clear as to this notice, it is evident that the bank and the other defendants were fully conversant with the plaintiff's claim and his alleged right to have an assignment of said shares of stock indorsed upon the books of the bank. Later plaintiff presented his assignment to the bank, and requested that a certificate therefor be issued to him. This request was refused by the officer in charge, who said he could not issue the same because Spencer owned the stock, and a new certificate could not be issued until the old certificates had been surrendered. The evidence shows that the original certificates had been negligently, or otherwise wrongfully, withheld from Spencer by the bank, but that upon the levy of the execution had been delivered to the sheriff. Four and one-half shares of this stock had belonged to Spencer since 1898, and $2\frac{1}{4}$ shares since 1904. After the levy of the execution plaintiff executed and delivered his non-negotiable promissory note for $675 to Spencer's mother, to whom Spencer had assigned his claim against plaintiff for the consideration agreed upon.

The general rule seems to be that, in the absence of a controlling statute, a purchaser for a valuable consideration is protected against subsequent attachment or execution against his grantor, although he failed to have his assignment recorded upon the books of the corporation. There is a vast difference between the decisions of the different courts, which is attributed in part to the various statutory provisions and the constructions placed thereon. But, where there is no express statutory provision requiring that an assignment be entered upon the books of the company to effect a sale, it is held that the purchaser, in

the absence of fraud, takes the legal title upon an assignment of the stock. Our own statutes failing to provide the manner of bringing about a transfer of capital stock, and failing to prescribe the rights of the parties when there is a failure to indorse the assignment upon the books of the company, we need only to consider those decisions treating of similar cases and conditions, and to determine the priority of the parties as it exists in the absence of legislation. In *Herrick v. Humphrey Hardware Co.*, 73 Neb. 809, it is said: "The object of having transfers of stock recorded upon the books of the company is to give the company notice of whom its stockholders are." In *Farmers & Merchants Nat. Bank v. Mosher*, 63 Neb. 130, it was held: "The real and not the apparent interest of a stockholder in the property of the corporation represented by shares of stock registered in his name may be reached by garnishee process served on the corporation." The same rule, of course, would necessarily apply to the levy of an execution. It is the consensus of opinion, and apparently the universal rule, that a transfer by an assignment of the certificates leaves nothing in the assignor which can be reached by subsquent attachment or levy of execution, although the stock remains in his name upon the books of the corporation, and that it is immaterial that the by-laws or rules of the corporation require the transfer to be made upon its books. *Finney's Appeal*, 59 Pa. St. 398; *Beckwith v. Burrough*, 13 R. I. 294; *Baldwin v. Canfield*, 26 Minn. 43; *Prince Investment Co. v. St. Paul & S. C. Land Co.*, 68 Minn. 121; *State Ins. Co. v. Gennett*, 2 Tenn. Ch. 100; *Gilbert v. Manchester Iron Mfg. Co.*, 11 Wend. (N. Y.) 628; *Goyer Cold Storage Co. v. Wildberger*, 71 Miss. 438, 15 So. 235; *Blouin v. Liquidators of Hart & Hebert*, 30 La. Ann. 714; *Sargent v. Essex Marine R. Corporation*, 9 Pick. (Mass.) 202; *Bushnell v. Hall*, 9 Ky. Law Rep. 684; *Lipscomb v. Condon*, 56 W. Va. 416, 67 L. R. A. 670; *Mapleton Bank v. Standrod*, 8 Idaho, 740, 67 L. R. A. 656. In *Lipscomb v. Condon*, *supra*, and the notes of the publisher in the book cited,

there is a review of many cases dealing with this subject. That case holds: "An unregistered transfer of shares of corporation stock, for which no certificate has been issued, if made for a valuable consideration and without fraud, vests in the transferee a title to the shares superior to the claim of a subsequent attaching creditor of the transferrer." This rule is well supported by the cases reviewed in the notes, some of which are above cited.

The supreme court of Minnesota in *Lund v. Wheaton Roller Mill Co.*, 50 Minn. 36, held that a sale and transfer of corporate stock, although not entered on the books of the corporation, is effectual as between the parties, and takes precedence of a subsequent attachment in behalf of a creditor of the vendor. The statutes considered by the court in that case provided: "The transfer of shares is not valid, except as between the parties thereto, until it is regularly entered on the books of the company. * * * The stock of any such corporation shall be deemed personal property, and be transferable only on the books of such corporation, in such form as the directors prescribe." The reason for the decision was, as we understand it, that the provisions of the statutes were held as intended solely for the protection and benefit of the corporation, and do not incapacitate a shareholder from transferring his stock. Because of the fact that the bank whose capital stock is in controversy herein had the actual possession of the certificates of stock, a delivery thereof by Spencer to the plaintiff was impossible. The assignment made by him, of date September 14, 1906, in the absence of fraud, was sufficient to convey the stock to the plaintiff.

Defendants seek to invoke the rule of *Hedrick v. Strauss*, 42 Neb. 485, and *Nebraska Moline Plow Co. v. Blackburn*, 74 Neb. 246, which in the case last cited is given as follows: "One is not a *bona fide* purchaser for value until he has actually paid the purchase price or become irrevocably bound for its payment." It is true that in the case at bar the plaintiff had not become irrevocably bound to the extent that he would have been required

to give the promised note upon a failure of the considera-
tion; but the rule invoked is not applicable to this case,
for the reason that it is not shown that Spencer was in-
solvent, or that the transfer of the stock to the plaintiff
herein and the giving of the note to Spencer's mother will
operate to deprive Beecroft from the collection of his
judgment. This brings us to the consideration of another
and the controlling issue.

Each party contends that the burden of proof is upon
the other. There is no contention that there was any
fraudulent intention on the part of the plaintiff, but that
before he gave the note to Spencer's mother he had notice
of such facts as would put a man of ordinary prudence on
inquiry. There is nothing in the record to indicate that
an inquiry made by a prudent man would lead him to the
conclusion that Spencer's transfer of the stock in contro-
versy was made fraudulently. It does not appear that the
consideration was inadequate, nor that Spencer was in-
solvent. It does not appear that he owed any person other
than Beecroft and his own mother. His property may
be sufficient to meet all of his obligations. Plaintiff is not
related to Spencer; but defendants contend that, as
Spencer's mother received the consideration for the shares
of stock, the rule as to alleged fraudulent conveyances
between relatives, casting the burden of proof upon the
grantor, should be followed here. Spencer's mother's con-
nection with this litigation is not directly involved. The
real question to determine is where was the title to the
shares of stock at the time of the levy. Had the transac-
tion with Spencer's mother never entered into this case,
defendants could not then recover. It is apparent that de-
fendants have no greater rights than they would had the
promissory note never been given. In such case the plain-
tiff would be entitled to the fruits of his contract, unless
defendants could establish that such transaction was
fraudulent. The burden of proof was upon the defendants.
They introduced no evidence to prove that the transfer

was fraudulent, nor that it hindered or delayed the collection of their judgment.

It is contended by the defendants that different causes of action are improperly joined in the petition, and that an injunction would not lie to restrain the sale of the stock. It cannot be successfully contended but that the assignee of the shares of stock of a corporation is entitled to maintain an action in equity to require an obstinate corporation to enter his assignment upon the books of the corporation and issue to him a new certificate representing the same. 10 Cyc. 605. The officers of the defendant bank refuse to recognize plaintiff's assignment, and apparently co-operate with Beecroft to defeat the plaintiff's title. Beecroft is a nonresident of the state. Plaintiff is entitled to have his stock preserved to him, and to prevent its incumbrance by execution sale. For these purposes he has no adequate remedy at law.

We recommend that the judgment of the district court be reversed and the cause remanded, with instructions to the lower court to enter a judgment for plaintiff consistent with this opinion.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and this cause remanded, with instructions to the lower court to enter judgment for plaintiff consistent with the opinion.

REVERSED.

The following opinion on motion for rehearing was filed December 5, 1908. *Former judgment modified. Rehearing denied:*

GOOD, C.

This cause is now before us upon an application for a rehearing, and has been orally argued. The opinion is reported, *ante,* p. 191. In the body of the opinion it was

stated: "It is not shown that Spencer was insolvent," and the cause was reversed and remanded, with instructions to enter a judgment for plaintiff consistent with the opinion.

The principles of law announced in the case are not seriously assailed upon this application, but it is urged that there was sufficient evidence in the record to show the insolvency of Spencer. We have reexamined the record and find that there is some evidence tending to show Spencer's insolvency. The trial court evidently considered this evidence sufficient to warrant such a finding. We do not consider it necessary to discuss the sufficiency of the evidence to support such a finding. In view of the fact that the trial court deemed the evidence sufficient, and the fact of the insolvency of Spencer, if proved, would materially affect the ultimate disposition of the case, we think the cause should be remanded generally, so that appellees may have an opportunity to introduce further evidence if they so desire.

We recommend that the opinion be modified so as to direct a reversal and remanding of the cause for further proceedings according to law, and that as so modified the opinion be adhered to.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given, the opinion is modified as above recommended, and as modified is adhered to, and the cause is reversed and remanded for further proceedings according to law.

JUDGMENT ACCORDINGLY.